UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE NEVADA, INC.,

       Plaintiff,                      Case No. 24-cv-10818

v.                                    HON. MARK A. GOLDSMITH

AUDREY HOMES, LLC et al.,

       Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Dkt. 24)**

      Plaintiff Rose Nevada, Inc., Trustee of the Jonathan Rose Exempt Trust II and the Jonathan Rose Distribution Trust, brings this action against Defendant Warren Rose and related parties.[1] The complaint alleges violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (RICO), and brings state-law claims for member oppression, shareholder oppression, fraudulent concealment, breach of fiduciary duty, unjust enrichment, and accounting.[2] Before the Court is Defendants' motion to dismiss (Dkt. 24). For the reasons that follow, the Court

---

[1] The additional Defendants include: Audrey Homes, L.L.C.; Edward Rose Village Apartments, L.L.C. (formerly Edward Rose & Sons, L.L.C.); Edward Rose Building Company, L.L.C.; Edward Rose of Indiana, L.L.C.; Huron Development, L.L.C.; Occidental Development, L.L.C.; Park Drive Supply Company, L.L.C.; St. Clair Properties, L.L.C.; Edward Rose Building Company; Edward Rose Company; Warren Rose; Richard Lewinski; and Does 1-50.

[2] An earlier action filed in a Michigan state court by Rose Nevada against Warren Rose, raising similar state-law claims, was recently dismissed. Order on Mot. for Summ. Disposition (Dkt. 29-1).

1

grants the motion in part and denies it in part, dismissing the federal claim with prejudice and the state-law claims without prejudice.[3]

## I. BACKGROUND

Rose Nevada's amended complaint alleges the following facts. In 2009, Sheldon Rose created separate and distinct trusts for the benefit of his three children, including Jonathan and Warren Rose. Am. Compl. ¶ 25 (Dkt. 17). Warren Rose was appointed co-trustee of Jonathan Rose's trusts in 2015 and served in that capacity for about five years. Id. ¶¶ 29, 34. Subsequently, Jonathan Rose appointed Rose Nevada as trustee of his trusts. Id. ¶¶ 35, 36.

After assuming the role of trustee, Rose Nevada discovered that Warren Rose had allegedly been engaging in self-interested transactions by causing loans to be made from entities that Warren Rose controlled and in which Jonathan's Rose's trusts had ownership interests (the "loaning entities"). Id. ¶¶ 37, 38. These loans were made to Edward Rose Company (ERC), which then made loans to other entities—in which Warren Rose had interests but the Jonathan Rose trusts did not. Id. ¶¶ 38, 43. In this action, Rose Nevada sues Warren Rose, Richard Lewinski (who allegedly assisted Warren Rose), and the loaning entities.

## II. ANALYSIS

Rose Nevada brings a federal claim pursuant to 18 U.S.C. § 1962(c) for RICO violations, as well as state-law claims for member oppression, shareholder oppression, fraudulent concealment, breach of fiduciary duty, unjust enrichment, and accounting. Am. Compl. ¶¶ 58–

---

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Rose Nevada's response (Dkt. 28) and Defendants' reply (Dkt. 29). The Court granted Defendants' motion for leave to file supplemental briefing regarding issue preclusion (Dkt. 30). Defendants filed a supplemental brief on the subject (Dkt. 34), Rose Nevada filed a response in opposition (Dkt. 35), and Defendants filed a response (Dkt. 36).

2

135. The Court first addresses Rose Nevada's RICO claim, finding that it must be dismissed with prejudice because Rose Nevada has failed to properly plead a RICO claim.[4] The Court then declines to exercise supplemental jurisdiction over Rose Nevada's state-law claims and dismisses the state-law claims without prejudice.

A. RICO Claim

1. Pleading Requirements

To state a claim under RICO, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 791 (6th Cir. 2012) (punctuation modified). A RICO plaintiff must also show that the alleged racketeering activity caused injury to his business or property. Grantham & Mann, Inc. v. Am. Safety Prods., Inc., 831 F.2d 596, 606 (6th Cir. 1987).

Defendants argue that Rose Nevada's RICO claim is insufficiently pled for several reasons. Mot. at 8–22. Defendants assert that Rose Nevada has not sufficiently alleged an enterprise for purposes of RICO. Defendants also maintain that Rose Nevada's allegations of mail and wire fraud—the underlying racketeering activities—fail to state claims under those statutes. Third, Defendants claim that Rose Nevada's allegations fail to establish RICO causation.

The Court considers each of Defendants' arguments in turn.

a. Enterprise

---

[4] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

Defendants first challenge whether Rose Nevada has sufficiently alleged the existence of an enterprise. RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Rose Nevada alleges that Defendants created an "association-in-fact" enterprise. See Am. Compl. ¶ 63.

The definition of "enterprise" is liberally construed to effectuate RICO's remedial purpose. Ouwinga, 694 F.3d at 794. The Sixth Circuit has explained that an enterprise requires "'a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach.'" Id. (quoting VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)).

The Supreme Court recently clarified what is required to show such structure in Boyle v. United States, 556 U.S. 938, 946 (2009): "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." The Supreme Court further clarified that the enterprise need not be hierarchical, can make decisions on an ad hoc basis, does not need a formal name, and does not require members to have fixed roles. Id. at 948. Rather, a plaintiff must show "a continuing unit that functions with a common purpose." Id.

Here, Rose Nevada has set forth the necessary elements under Boyle. First, Rose Nevada alleges a purpose for the enterprise—to defraud Jonathan Rose's trusts by concealing the fact that funds were being funneled through below-market loans from the various entities in which the Jonathan Rose trusts had an interest to entities in which Warren Rose—but not the Jonathan Rose trusts—held interests. Am. Compl. ¶ 63. Second, Rose Nevada has sufficiently pled the relationships among those associated with the enterprise, asserting that Warren Rose effectively

4

controlled all the Defendant entities and specifying transactions between the entities that were used to carry out the alleged fraud. Third, longevity is alleged, as Rose Nevada claims that this scheme has been in place since at least 2014 and has continued until at least 2022. Id. ¶ 66.

Therefore, Rose Nevada's Complaint satisfies the Boyle factors for purposes of alleging an enterprise.

### b. Pattern of racketeering activity

Defendants argue that Rose Nevada's complaint fails to satisfy RICO's pattern of racketeering activity element. Mot. at 11. To show a pattern of racketeering activity, a plaintiff asserting a RICO violation must establish that each defendant individually committed at least two "predicate acts." Kerrigan v. ViSalus, Inc., 112 F. Supp. 3d 580, 605 (E.D. Mich. 2015) ("[I]n order to sufficiently allege that a defendant violated § 1962(c), a plaintiff must allege that that particular defendant committed a pattern of predicate acts."). Defendants assert that while Rose Nevada relies on the mail and wire fraud statutes as the alleged "predicate" acts, it has not alleged facts amounting to violations of those statutes. Mot. at 11–16.

Mail fraud entails "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." United States v. Jamieson, 427 F.3d 394, 402 (6th Cir. 2005). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." Id. In pleading mail fraud, Rose Nevada must satisfy Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and

5

(4) explain why the statements were fraudulent.'" Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 404 (6th Cir. 2012) (quoting Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008)).

Rose Nevada has not satisfied any of these requirements. It has not identified or alleged any fraudulent statements of any kind. Rather, its theory of the case is that Defendants did not disclose self-dealing transactions. The federal mail and wire fraud statutes "bar only schemes for obtaining property" and not "undisclosed self-dealing." Kelly v. United States, 590 U.S. 391, 399, 404 (2020). Rose Nevada does not allege that it or the Jonathan Rose trusts were deprived of any money or property, or that they were involved in any property transfers or economic transactions. According to Rose Nevada's allegations, the only parties deprived of property were the loaning entities—the same entities Rose Nevada is suing in this case.

Rose Nevada fares no better under the wire fraud statute. Wire fraud is "modeled after" mail fraud and "the same analysis applies to both." Counts v. Gen. Motors, LLC, 606 F. Supp. 3d 678, 698 (E.D. Mich. 2022) (citing United States v. Kennedy, 714 F.3d 951, 958 (6th Cir. 2013)).

Rose Nevada's RICO claim must be dismissed for failure to properly allege predicate acts.[5]

### c. Causation

Rose Nevada's RICO claim also founders for failure to properly allege causation. A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

---

[5] Defendants also argue that Rose Nevada engages in impermissible group pleading that fails to specify the actionable conduct of each Defendant. Mot. at 9–11. Because Rose Nevada has failed to allege actionable conduct under the mail fraud and wire fraud statutes, there is no need to address Defendants' argument on group pleading.

Defendants correctly argue that Rose Nevada has not alleged any injury to itself or the trusts. Its causation allegations share the same fatal deficiency as the predicate act allegations: The Jonathan Rose trusts did not part with any property. And to the extent the loaning entities parted with property, that was not property of the Jonathan Rose trusts; it belonged to the entities in which the trusts had ownership interests. Mot. at 12–13; Am Compl. ¶ 44. Further, any incidental loss in value of the trusts' ownership interests in the loaning entities is not an injury or damage that a constituent owner, such as a shareholder or LLC member, has standing to sue to recover under RICO. See Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 317 (6th Cir. 1987) (holding that shareholders lack standing under RICO when the only damage is diminution of share value); Warren v. Mfrs. Nat'l Bank of Detroit, 759 F.2d 542, 544-46 (6th Cir. 1985) (holding that RICO does not allow a shareholder or member to bring a federal claim based on an injury to a corporation). Thus, Rose Nevada's allegations that Defendants' actions impacted the value of the "account balances" of the Jonathan Rose trusts, see Am. Compl. ¶ 52, do not plausibly set forth a cognizable injury under RICO.

Whether viewed through the prisms of causation, injury, damage, standing, or predicate acts, Rose Nevada cannot show how it has a plausible RICO claim under 18 U.S.C. § 1962.[6]

---

[6] Defendants argue that the recent state court judgment dismissing all of Rose Nevada's claims against Warren Rose require dismissal of Rose Nevada's complaint in in the instant action under principles of collateral estoppel, because the instant claims are based on identical underlying allegations of wrongful conduct asserted in the state action. Supp. Br. at 1. To establish that collateral estoppel applies, Defendants must satisfy two elements: (i) a question of fact essential to the present case was actually litigated and determined by a valid and final judgment in a prior action, and (ii) the parties against whom collateral estoppel is invoked had a full and fair opportunity to litigate the issue in the prior case because they or their privies were parties to that case. See Scott v. Bank of Am., N.A., No. 21-11068, 2022 WL 4587839, at *10 (E.D. Mich. Sept. 29, 2022); Monat v. State Farm Ins. Co., 677 N.W.2d 843, 845–848 (Mich. 2004).

Defendants' arguments do not provide an adequate basis to conclude that Rose Nevada is precluded from litigating this RICO action. While the state court found that Warren Rose had no

### 2. Leave to Amend

In the final sentence of its response to Defendants' motion to dismiss, Rose Nevada asks the Court to grant it leave to amend its complaint "if the court is inclined to grant the [m]otion." Resp. at 25. Courts in this circuit have consistently rejected such perfunctory requests. Making an amendment request as "an aside" in response to a dispositive motion "is not the proper procedure for requesting leave to amend." Lee v. Cincinnati Capital Corp., No. 19-12133, 2021 WL 598543 at *4 (E.D. Mich. Feb. 16, 2021) (citing Begala v. PNC Bank, Ohio, Nat'l Ass'n, 214 F.3d 776, 784 (6th Cir. 2000) (stating that plaintiffs, who filed a motion for clarification rather than a motion for leave to amend, are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies")). Thus, the Court rejects this request.

### B. State-Law Claims

With Rose Nevada's federal claim being dismissed, the Court declines to exercise supplemental jurisdiction over their state-law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). The Court dismisses Rose Nevada's state-law claims without prejudice.

---

disclosure duty to the trusts as manager of one entity (Rose Cash Management II), it did not determine whether Warren Rose owed a duty as manager, president, or director of Edward Rose Building Corporation or any of the other loaning entities. See State Court Order (Dkt. 30-1 at 5–6). Rose Nevada attempted to amend its complaint in the state proceedings to include the transactions regarding the loaning entities and Edward Rose Building Corporation, but the state court denied its motion and explicitly only ruled on the transactions concerning transfers between Rose Cash Management, LLC and ERC. Order re Mot. to File Second Am. Compl. & to Compel (Dkt. 35-3). Thus, the factual issues underpinning the RICO claim in the present action are far broader than the factual issues litigated in state court. There is no full identity of issue that would allow collateral estoppel against Rose Nevada's broader RICO allegations.

8

### III. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to dismiss (Dkt. 24). Rose Nevada's federal claim is dismissed with prejudice. Its state-law claims are dismissed without prejudice.

SO ORDERED.

Dated: March 25, 2025  	s/Mark A. Goldsmith
　　　　Detroit, Michigan  	MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2025.

　　　　　　　　　　　　　　　　　　　　s/Carolyn Ciesla
　　　　　　　　　　　　　　　　　　　　Case Manager